## THE TERRITORY *v.* WOOLSEY.

[OCTOBER 24, 1867.]

EVIDENCE FOR DEFENDANT CHARGED WITH LARCENY.—Evidence that S. had offered for sale to C., at or about the time of an alleged larceny by defendant, stock similar to that with the larceny of which defendant was accused, and that subsequently defendant had stated to C. he had purchased this stock of S., is material and competent testimony for defendant, as tending to disprove a felonious taking.

A SENTENCE AGAINST A DEFENDANT CONVICTED OF A CRIME WILL BE REVERSED where it appears from the indictment and other parts of the record that the grand jurors who found the indictment were not residents of the county for which they were chosen, and have not taken the requisite oath prescribed by law.

APPEAL from the third district. The opinion states the facts.

*Zerubbabel Snow,* for the territory.

*Hempstead & Thurman,* for the respondent.

TITUS, C. J.:

On the twenty-second of December last, the defendant above named was tried by jury in the probate court of Great Salt Lake county, in the territory of Utah, on an indictment which the record brought here alleges was found by "the grand jury of the people of the United States in the territory of Utah, summoned, called, impaneled, sworn, and charged to inquire into crimes and offenses committed in the body of the county of Great Salt Lake," charging the said

defendant with larceny in stealing, "on the fourteenth day of October, in the year of our lord one thousand eight hundred and sixty-six, at the West Jordan range in the county of Great Salt Lake, in the territory of Utah," a "light roan steer" and a "heifer," etc. This is the description of the property and offense in the first count of the indictment, and it is continued in the second with but little variation.

The jury returned a verdict of "guilty;" and on the twenty-second of January, 1867, the probate court, overruling a motion in arrest of judgment, sentenced the defendant to six months imprisonment at hard labor in the Utah penitentiary.

From this judgment of the probate court an appeal was taken to the district court of the third judicial district of Utah, in which the said judgment was reversed on the fifteenth of March, 1867; and from its judgment of reversal an appeal brings the record here, which was submitted to this court without formal argument.

Previous to the trial, the defendant, on the nineteenth of December, 1866, moved the probate court to continue his cause, in consequence of the absence of a witness of the name of W. B. Cadwell of Great Salt Lake City, who, it was alleged by the defendant, would be procurable at a future time, and would prove, among other things, "that some six weeks or two months before," he was going across the Jordan to look for a horse, when the said Cadwell met a William Schofield, who was driving two beef animals, one a stag of roan color and the other a red heifer; that the said Schofield offered to sell "these cattle" to the said Cadwell, but differed in reference to the kind of pay to be given; that the said Cadwell returned to the city some time in the afternoon of the same day, and met the deponent, who then and there informed the said Cadwell that he had purchased the cattle from the said Schofield, giving a certain dark bay or brown horse for the said cattle; that the said Cadwell knew the defendant owned such a horse "before, and" never afterwards "saw" him in possession of the defendant, "that the said facts (were) material to the defense;" and "that he" could "not prove" them "by any other person."

To avoid delay, it appears by the record that the counsel

for the prosecution agreed to submit the affidavit containing this statement of facts to the jury as evidence on the trial. The probate court, however, excluded it as irrelevant, and exception was taken, as appears by the record, to this exclusion.

The attention of this court was directed to two other errors apparent on the record: one, that the indictment does not allege that the grand jurors were taken from Great Salt Lake county; the other, that the oath administered to these grand jurors, and which is set out in the indictment, was not such as is required by the statutes of Utah.

Taking these exceptions in the order of their statement, the evidence, which the record shows to have been excluded, appears to have been vitally material to the case. It would have shown that at or about the time of the larceny alleged in the indictment, a man of the name of Schofield offered to sell cattle of the same description as those alleged to have been stolen to William B. Cadwell; that but for their disagreement as to the medium or manner of payment, Cadwell would himself have bought the cattle; that as it was, the defendant himself purchased them, in the same direction and not far from where the larceny is alleged in the indictment to have been committed; and that he spoke to Cadwell the same day of his purchase, and of his giving in exchange for them a horse which Cadwell knew he owned before but not after the transaction.

Such facts as these certainly ought to have been submitted to the jury, with the favorable notice of the judge, tending as they did to prove that the defendant acquired the cattle alleged so have been stolen by honest purchase, and not by felonious taking. By no rule of law or common sense known to the administration of justice ought such evidence to have been withheld by the probate court, and its act in doing so divests its subsequent proceedings in the case of all validity. For this error of the probate court, if no other were apparent on the record, its judgment in this case ought to be reversed.

As a further exception, however, it appears that the indictment purports to set out the qualifications of the grand jurors, and does it in such a manner as to show that it was not competent by the statutes of the territory of Utah. And as a

still further exception, it appears that the oath which the in-
dictment shows to have been administered to the grand jury
in the case was defective in one or more of the essentials re-
quired by the same statutes.

The "Act regulating the mode of procedure in criminal
cases," approved January 21, 1853, provides: "Sec. 17. When
necessary, the court shall issue an order requiring an officer
to summon fifteen judicious men, residents of the county, for
a grand jury, who shall be sworn to inquire faithfully into
offenses, and present indictments by the agreement of at least
twelve of their number against offenders, who shall be prose-
cuted, and the foreman shall have power to swear witnesses
and compel their attendance."

When an officer or any body of officers of the court is re-
ferred to merely by title, it is not necessary to detail the mode
of appointment, the qualifications, the powers, or the duties
of the officer or officers of the reference. And when any
function or procedure of the court is to be stated on the record
with the mere ordinary conditions of its exercise, details are
wholly unnecessary. But when the record of any case shows
an actual want of the requisite qualifications in any officer or
officers or the court, or an essential defect in its procedure,
this is always such error as must expose its proceedings to
reversal by any court charged with the duty of revision.
Now, the record of this case, which describes the grand jury,
and to some extent purports to set out its qualifications, ab-
solutely omits to state that those composing it were "residents
of the county" of Great Salt Lake, which comprised the juris-
diction of the court, and constituted the very body for and
over which the grand jurors were charged to inquire. As this
qualification, residence " of the county," is thus required by
the very letter of the Utah statute, as well as by the example
of every known judicial system of which the jury is an ele-
ment, its omission from this description of the grand jury is
a fatal error.

From all that appears in the record, the grand jurors, or
some of them, may have been residents of some other county
of Utah, or even of some neighboring state or territory. Were
the title "grand jury" or "grand inquest" alone given, without
any detail of qualifications, the legal requisites might be pre-

sumed; but in the face of partial and defective statements of qualification, this court can not imply any essential as belonging to the grand jury of this or any other case.

The indictment also states that the grand jury "were summoned, called, impaneled, sworn, and charged to inquire into crimes," etc.    The statute, however, requires that they shall be sworn "to present indictments by the agreement of at least twelve of their number."  The record of this case shows that neither by the oath nor in any way was the grand jury instructed in this essential of duty, nor that at least twelve of the number did agree to the indictment. From all that appears, it may be inferred that four, five, six, or any number less than twelve, may have found the indictment in the present case.    And this is the omission of a most essential requisite, for all experience shows that four, five, six, or any number less than twelve, of fifteen men, would be more likely to combine, in permitting a guilty man to escape or in making an innocent one suffer, than a larger number of the same body.   Against a defective and erroneous oath which the record of the case shows to have been administered to the grand jury, this court can not presume that at least twelve men concurred in the indictment under consideration.   And for this reason, if for no other, the district court's judgment of reversal ought to be sustained.

For the foregoing reasons, the judgment of the district court reversing the judgment of the probate court in the present case ought to be affirmed, and the county of Great Salt Lake ought to pay the costs of the same.

DRAKE and McCURDY, JJ., concurred.